UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SHARON M. HINES,<br><br>     Plaintiff<br><br>  v.<br><br>ELLIS NURSING HOME, INC., also known as ELLIS REHABILITATION AND NURSING CENTER,<br><br>     Defendant. | Case No. 23-cv-10874-DJC |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                                                                                                            **July 14, 2025**

**I.      Introduction**

Plaintiff Sharon M. Hines ("Hines") has filed this lawsuit against Defendant Ellis Nursing Home, Inc. d/b/a Ellis Rehabilitation and Nursing Center ("Ellis") alleging a violation of Mass. Gen. L. c. 151B and 42 U.S.C. § 2000e *et seq.*, Title VII of the Civil Rights Act of 1964 (Count I), an equal protection claim under the U.S. Constitution (Count II) and substantive and procedural due process claims under the U.S. Constitution and the Massachusetts Declaration of Rights (Count III). D. 1-1. After allowing Ellis's motion to dismiss in part, only Count I's disability discrimination claim, D. 18, including a claim for failure to provide reasonable accommodation, remains. D. 18. Ellis has now moved for summary judgment as to this remaining portion of Count I. D. 38. For the reasons stated below, the Court ALLOWS the motion. Id.

1

## II. Standard of Review

The Court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." Santiago–Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (quoting another source). The movant bears the burden of demonstrating the absence of a genuine issue of material fact. Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000); see Celotex v. Catrett, 477 U.S. 317, 323 (1986). If the movant meets its burden, the non-moving party may not rest on the allegations or denials in its pleadings, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), but must come forward with specific admissible facts showing that there is a genuine issue for trial. Borges ex rel. S.M.B.W. v. Serrano–Isern, 605 F.3d 1, 5 (1st Cir. 2010). The Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009). "When deciding cross-motions for summary judgment, the court must consider each motion separately, drawing inferences against each movant in turn." Reich v. John Alden Life Ins. Co., 126 F.3d 1, 6 (1st Cir. 1997).

## III. Factual Background

Ellis is a skilled nursing facility that offers residents both short-term and long-term rehabilitation in a variety of settings. D. 40 ¶¶ 1-2; D. 45 ¶¶ 1-2. On November 21, 2011, Ellis hired Hines as its Activity Director. D. 40 ¶ 4; D. 45 at 18 ¶ 1. Her job duties included, but were not limited to, meeting with staff, ensuring staff coverage in every unit, and interviewing new residents. D. 40 ¶ 6; D. 45 at 18 ¶ 2. As Activity Director, Hines was required to perform her job in accordance with applicable guidelines from the Massachusetts Department of Public Health ("DPH"). D. 40 ¶ 7; D. 45 ¶ 7. In a typical week, Hines worked eight hours per day from Monday

2

to Friday, D. 40 ¶ 12; D. 45 ¶ 12, although she also occasionally worked four hours on Saturday and four hours on Sunday as the weekend manager on duty, D. 40 ¶ 13; D. 45 ¶ 13.

As the COVID-19 pandemic spread throughout Massachusetts and the country in March 2020 and before the vaccines were available, Ellis took various steps to prevent its spread, including by prohibiting visits and modifying ways that employees performed their day-to-day activities, such as requiring Hines to use FaceTime to allow residents to speak with family members. D. 40 ¶¶ 23-26; D. 45 ¶¶ 23-26.[1] One August 4, 2021, DPH issued an Emergency Order requiring nursing homes like Ellis to ensure that all personnel are fully vaccinated against COVID-19 by October 10, 2021 "unless such administration is medically contraindicated." D. 40 ¶ 34; D. 45 ¶ 34. Failure to do so would result in a fine of $50 per day and/or admission freeze, meaning Ellis would not be able to accept new residents. D. 40 ¶ 34; D. 45 ¶ 34. On August 12, 2021, Ellis

---

[1] Hines objects to some of Ellis's statements of material facts. See generally D. 45. Most of these objections, however, do not oppose "the truth of the statements" offered and "were unaccompanied by 'a citation to the specific page or paragraph of identified record material supporting the assertion.'" López-Hernández v. Terumo Puerto Rico LLC, 64 F.4th 22, 27 (1st Cir. 2023) (quotation omitted). For example, Ellis attests that before COVID-19 vaccines became available, it took steps to prevent the disease's spread including by "creating a separate unit for residents who tested positive for COVID-19." D. 40 ¶ 24; D. 45 ¶ 24. Hines contests this statement by claiming that "[d]ue to lack of staff willing to work on the designated COVID-19 unit [she] volunteered to work as a CNA on that unit . . . abiding by CDC PPE requirements." D. 45 at 5. The objection does not dispute the veracity of Ellis's statement of facts. Additionally, some of Hines's objections also include information that contradict other evidence and crucially, her own deposition. See Meuser v. Fed. Express Corp., 564 F.3d 507, 513 n. 2 (1st Cir. 2009) (holding that the plaintiff may not "contradict a prior deposition statement via a later sworn testimony") (citing Torrech-Hernandez v. General Electric., 519 F.3d 41, 47 (1st Cir. 2008)). For example, Hines contests Ellis's assertion that it never required her to work weekends as a COVID screener/receptionist, D. 45 ¶ 50, and claims that Ellis's Administrator, Anthony Franchi ("Franchi"), had forced her to work as a screener, id. This objection is contradicted by Hines's deposition in which she attests that she never worked as a weekend screener. D. 42-1 at 31-32. Accordingly, given that Hines's objections do not controvert Ellis's statements of material facts, the Court deems those statements to be admitted for the purposes of resolving this motion for summary judgment. See Stonkus v. City of Brockton Sch. Dep't, 322 F.3d 97, 102 (1st Cir. 2003).

3

announced a vaccination policy requiring all of Ellis's employees to be vaccinated unless they applied for and received a medical or religious exemption. D. 40 ¶ 35; D. 45 ¶ 35; D. 45 at 18 ¶ 3. On August 30, 2021, Hines applied for a medical exemption from the policy, D. 40 ¶ 40; D. 45 ¶ 40; id. at 18 ¶ 5, which was approved on September 2, 2021. D. 40 ¶ 43; D. 45 ¶ 43; id. at 18 ¶ 8.

On September 23, 2021, Franchi met with Hines to ask if she would consider occasionally working Saturday shifts as a COVID screener/receptionist, responsible for screening individuals for COVID-19 as they entered the facility to which Hines refused. D. 40 ¶¶ 46, 48; D. 45 at 19 ¶¶ 9-10. Ellis never required Hines to work weekends as a COVID screener/receptionist, and Franchi did not terminate her employment when she refused. D. 40 ¶ 50 (citing Hines's deposition, D. 42-1 at 31-32); D. 45 ¶ 50.

On September 24, 2021, DPH issued an updated memorandum replacing the earlier August 2021 order. D. 40 ¶ 51; D. 45 ¶ 51. The memorandum contained language stating that "[a]s much as possible, staff who are not fully vaccinated should not work across units or floors." D. 40 ¶ 52; D. 45 ¶ 52. On October 5, 2021, Franchi and Ellis's Human Resources Director Ellen Scott ("Scott") met with Hines to discuss how she could limit her time working across units and floors and continue working at Ellis while unvaccinated and in compliance with DPH requirements. D. 40 ¶ 54 (citing Hines's deposition, D. 42-1 at 70, 78); D. 45 ¶ 54. When asked if she could perform certain duties, such as resident interviews, via FaceTime, Hines refused, believing it could not be done. D. 40 ¶ 56, 59; D. 45 ¶ 56, 59. Hines also did not suggest any alternatives to the suggestion. D. 40 ¶ 62; D. 45 ¶ 62. Additionally, Hines refused to provide Franchi with any estimate of how much time she spent in her office versus on the floor with residents, information that Franchi sought to determine what steps Ellis could take to further reduce the extent to which Hines worked

across units and floors.  D. 40 ¶ 63 (citing Hines' deposition, D. 42-1 at 53, 55-56); D. 45 ¶ 63. On October 7, 2021, Franchi met with Hines and notified her that her employment was being terminated.  D. 40 ¶ 79; D. 45 ¶ 79.

## IV.  Procedural History

Hines initiated this action in Norfolk Superior Court on April 14, 2023.  D. 1-1.  Ellis removed the case to this Court on April 24, 2023.  D. 1.  Ellis then moved to dismiss.  D. 9.  On November 14, 2023, the Court allowed the motion to dismiss Count I to the extent that it asserts a retaliation claim, Count II and Count III, but denied the motion as to Count I's disability discrimination claim including a failure to provide a reasonable accommodation claim.  D. 18. Ellis now has moved for summary judgment as to the remaining claim.  D. 38.  The Court heard the parties and took the matter under advisement.  D. 53.

## V.  Discussion

### A.  Disability Discrimination

"The ADA prohibits a 'covered entity' . . . from 'discriminat[ing] against a qualified individual on the basis of disability in regard to . . . discharge of employees . . . and other terms, conditions, and privileges of employment.'"  Sutherland v. Peterson's Oil Serv., Inc., 126 F.4th 728, 737 (1st Cir. 2025) (alterations in original) (citing 42 U.S.C. § 12112(a)).[2]  "Where . . . the plaintiff does not have direct evidence of discriminatory animus, [courts] generally apply the burden-shifting framework outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973)," Flaherty v. Entergy Nuclear Operations, Inc., 946 F.3d 41, 53 (1st Cir. 2019).

---

[2] "Because Chapter 151B 'tracks the ADA in virtually all respects,' the Court analyzes the state and federal law claims together."  Callbeck v. Fallon Cmty. Health Plan, Inc., 480 F. Supp. 3d 308, 313 n.3 (D. Mass. 2020) (internal citation omitted).

                1.     *Prima Facie Case of Discrimination*

At step one, "[Hines] has the burden to establish by a preponderance of the evidence a prima facie case" of disability discrimination. Taite v. Bridgewater State Univ., Bd. of Trs., 999 F.3d 86, 93 (1st Cir. 2021). "Meeting the initial prima facie requirement is 'not especially burdensome'" and "[s]atisfaction of [same] creates a rebuttable presumption that discrimination prompted the challenged adverse employment action." Martinez-Burgos v. Guayama Corp., 656 F.3d 7, 12 (1st Cir. 2011). To do so, Hines must show that she "(1) has a disability within the meaning of the ADA; (2) is qualified to perform the essential function of the job, with or without reasonable accommodation; and (3) was subject to an adverse employment action based in whole or part on his disability." Sutherland, 126 F.4th at 738 (quoting Ramos-Echevarría v. Pichis, Inc., 659 F.3d 182, 186 (1st Cir. 2011)).

Ellis does not dispute at this step that Hines has a disability pursuant to the ADA or that she is qualified to perform her job with or without accommodations. Rather, Ellis contends only that Hines cannot "establish that she was subjected to an adverse employment action based in whole or in part on her disability," D. 39 at 11, because (a) Hines "explicitly testified" that Ellis "terminated her employment because she refused to work as the weekend screener" and (b) because Franchi never demanded that Hines get the COVID-19 vaccine at the October 5, 2021 meeting, id. at 11-12. Hines, for her part, asserts that Ellis terminated her because of both her refusal to accept the COVID-19 vaccine and to work weekends. D. 44 at 3. Hines attests in her deposition that her refusal to get the vaccine was likely one of the reasons for her dismissal because Ellis had previously "accepted [her] medical exemption and then over a month later, month and a half or so, [it] fired [her] because [she] was not vaccinated." D. 42-1 at 30.

As the First Circuit recently explained in Sutherland, evidence of temporal proximity between the plaintiff's disability and his or her alleged adverse employment decision may be sufficient "for a reasonable jury to infer a causal connection" between them and as such is enough "to survive summary judgment on [his or her] prima facie case of discrimination." Sutherland, 126 F.4th at 741. Here, the undisputed record indicates that Hines had applied for a medical exemption from the COVID-19 vaccination requirement on August 30, 2021, which was approved on September 2, 2021. D. 40 ¶¶ 40, 43; D. 42-1 at 94-95. Then, on October 7, 2021, roughly one month after approving the same, Ellis terminated Hines from her job. D. 40 ¶ 79; D. 45 ¶ 79; D. 42-1 at 115-16. That Hines's termination came about one month after the approval of her vaccine exemption application provides sufficient evidence demonstrating a causal relationship between her disability and termination. See Calero-Cerezo v. U.S. Dept. of Justice, 355 F.3d 6, 26 (1st Cir. 2004) (holding that one month between protected conduct and adverse action sufficient to establish causation at the prima facie stage). Because making a prima facie case of discrimination is not particularly burdensome and given the temporal proximity discussed, Hines has met her burden under this step of the analysis.

        2.      *Legitimate and Non-Discriminatory Reason for Termination*

At the second stage of the McDonnell Douglas test, the burden shifts to the employer to state a legitimate, nondiscriminatory reason for the adverse employment action. Flaherty, 946 F.3d at 53-54. Ellis may do so by "identifying enough admissible evidence to 'support a [rational] finding that unlawful discrimination was not the cause of the employment action.'" Straughn v. Delta Airlines, Inc., 250 F.3d 23, 33-34 (1st Cir. 2001) (alteration in original) (quoting Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 5-6 (1st Cir. 2000)). Importantly, "[t]he employer's burden of articulating a non-discriminatory reason is only a burden

of production, not a burden of persuasion; the burden of proving unlawful discrimination rests with the plaintiff at all times." Freadman v. Metro. Prop. & Cas. Ins. Co., 484 F.3d 91, 99 (1st Cir. 2007).

Here, Ellis has stated a legitimate, nondiscriminatory reason for terminating Hines, namely that Hines had refused to meaningfully engage with the company regarding accommodations it could make to retain Hines while still complying with DPH regulations. D. 41 ¶¶ 18-19; D. 42-1 at 115-16; D. 43 ¶¶ 17-18. This is the factual record here, supported by Hines's deposition in which she attests that she refused Franchi's suggestion to try an intake interview by Facetime, D. 40 ¶ 61; D. 45 ¶ 61; D. 42-1 at 60, failed to suggest alternatives, D. 40 ¶ 62; D. 45 ¶ 62; D. 42-1 at 63, refused to provide Franchi information about time spent performing in-office duties and on floor with patients, D. 40 ¶ 72; D. 42-1 at 70-71, and left the meeting abruptly after fifteen minutes, D. 40 ¶ 77; D. 45 ¶ 77; D. 42-1 at 74. Accordingly, Ellis has satisfied its burden in articulating a legitimate, non-discriminatory for Hines's termination.

### 3. Proffered Reason Is Not Pretextual

At the third step, because Ellis has articulated a legitimate and non-discriminatory reason for terminating Hines, the burden "shifts back to [Hines], who must . . . show, by a preponderance of the evidence, that [Ellis]'s proffered reason for the [termination] was pretextual and that the true reason was unlawful discrimination." Flaherty, 946 F.3d at 54. "At this stage, 'it is insufficient for a plaintiff merely to undermine the veracity of the employer's proffered justification.'" Tyree v. Foxx, 835 F.3d 35, 41 (1st Cir. 2016) (quoting Dichner v. Liberty Travel, 141 F.3d 24, 30 (1st Cir. 1998)). "[I]nstead, she must muster proof that enables a factfinder rationally to conclude that the stated reason behind the adverse employment decision is not only a sham, but a sham intended to cover up for the proscribed type of discrimination." Dichner, 141 F.3d at 30 (citations omitted).

The burden as to this element is different under Chapter 151B where instead of the "federal 'pretext plus' approach,' it is a "'pretext only' approach where a plaintiff needs only to "prove[ ] that the defendant's stated reasons for its employment decision are pretextual." Id. (citing Blare v. Husky Injection Molding Sys., 419 Mass. 437, 444-45 (1995)).

In her opposition to the motion, Hines asserts that she "has shown that evidence will be produced to a jury that the reason she was terminated was because she refused to be injected with the [COVID-19] vaccine and Defendant used the stated reasons in the termination letter as a pretext to fire her." D. 44 at 13. Notwithstanding this assertion, Hines has provided no evidence that can reasonably support a finding that the reason proffered by Ellis was a sham or that it was "a sham intended to cover up" for discrimination. Dichner, 141 F.3d at 30. To the contrary, this assertion is contradicted by Hines's deposition in which she attests that Franchi never demanded that she get vaccinated, D. 42-1 at 76, and that she never faced any disciplinary actions or otherwise discriminated against for refusing vaccination before COVID-19, id. at 37-40.[3] That is, neither the "pretext only" or "pretext plus" standard under state and federal law, respectively, have been satisfied here.

---

[3] To the extent that Hines points to statements made at the Department of Unemployment Assistance hearing, D. 45 at 22 ¶ 26, where Scott allegedly testified that Hines was terminated for not getting the COVID-19 vaccine and Franchi allegedly stated that "there was a financial incentive to have 100% compliance," id., such reliance does not warrant a different outcome. Even assuming such evidence is properly before this Court, see Colarusso v. FedEx Corp. Servs., Inc., No. 17-cv-11571-IT, 2020 WL 5849415, at *1 n.1 (D. Mass. Sept. 30, 2020) (concluding that the plaintiff's statement of fact was deficient under Local Rule 56.1 because, among other things, it cited evidence not in the record), statements made there are inadmissible hearsay as they are out-of-court statements, offered "to prove the truth of the matter asserted," Fed. R. Evid. 801(c), and as such cannot be considered on summary judgment, Davila v. Corporacion de P.R. Para La Difusion Publica, 498 F.3d 9, 17 (1st Cir. 2007) (holding that statements allegedly made by the plaintiffs' co-workers were inadmissible hearsay and cannot be considered at summary judgment). Accordingly, these statements cannot be considered here for at least this reason.

For the reasons stated, notwithstanding that Hines has made out a prima facie case of discrimination, her ADA claim fail.

**B.     <u>Failure to Provide Reasonable Accommodation</u>**

To the extent Hines's disability discrimination claim also includes a failure to accommodate claim, the record likewise does not support that claim. "To survive summary judgment on [her] 'reasonable accommodation' claim, [Hines] [must] produce enough evidence for a reasonable jury to find that (1) [she] was disabled within the meaning of the ADA, (2) [she] was able to perform the essential functions of the job with or without a reasonable accommodation, and (3) [Ellis], despite knowing of [her] disability, did not reasonably accommodate it." <u>Tobin v. Liberty Mut. Ins. Co.</u>, 433 F.3d 100, 107 (1st Cir. 2005).

Ellis contests that Hines has failed to show the third element. "Under the third element, an employee's request for accommodation sometimes creates a 'duty on the part of the employer to engage in an interactive process.'"[4] <u>E.E.O.C. v. Kohl's Dep't Stores, Inc.</u>, 774 F.3d 127, 132 (1st Cir. 2014) (quoting <u>Enica v. Principi</u>, 544 F.3d 328, 338 (1st Cir. 2008)). This process "involves an informal dialogue between the employee and the employer in which the two parties discuss the issues affecting the employee and potential reasonable accommodations that might address those issues." <u>Id.</u> (citing 29 C.F.R. § 1630.2(o)(3)). Where there is a breakdown in the process, "courts should look for signs of failure to participate in good faith or failure by one of the parties to make reasonable efforts to help the other party determine what specific accommodations are necessary." <u>Ortiz-Martínez v. Fresenius Health Partners, PR, LLC</u>, 853 F.3d 599, 605 (1st Cir. 2017) (quoting <u>Enica v. Principi</u>, 544 F.3d 328, 339 (1st Cir. 2008)). Because "both the employer and the

---

[4] Although the ADA does not requirement employers and employees to engage in an interactive process in every case, where the process is initiated, as it was here, both parties are obligated to engage in same in good faith. See <u>Kohl's Dept. Stores, Inc.</u>, 774 F.3d at 132 n.5.

employee have a duty to engage in good faith, and . . . empty gestures on the part of the employer will not satisfy the good faith standard." Kohl's Dept. Stores, Inc., 774 F.3d at 132. Conversely, if the "employee fails to cooperate in the process, then the employer cannot be held liable under the ADA for failure to provide reasonable accommodations." Id.

Here, the undisputed record indicates that the interactive process broke down on October 5, 2021, where Franchi, Scott and Hines discussed accommodations to retain Hines while complying with the September [] DPH guidance. D. 40 ¶ 54; D. 45 ¶ 54; D. 42-1 at 68-69, 71, 115. As discussed, during the meeting, Hines refused to consider Franchi and Scott's suggestion for her to conduct intake interviews via FaceTime because she believed it could not be done (even though Hines has never tried it). D. 40 ¶¶ 56-59; D. 45 ¶¶ 56-59; D. 42-1 at 57-58. Hines likewise refused to provide Franchi with an answer when asked about the amount of time she works on the floor versus in the office, information which Franchi needed to accommodate Hines and maintain compliance with the DPH guidance. D. 40 ¶ 63; D. 45 ¶ 63; D. 42-1 at 54-55. Indeed, rather than substantively responding to these inquiries, Hines was frustrated and communicated that Ellis could fire her if it wants and walked out of the meeting within fifteen minutes. D. 42-1 at 69, 74, 116; D. 40 ¶ 77; D. 45 ¶ 77.

Hines, for her part, attests in her deposition that the FaceTime interview suggestion would not have been feasible. D. 42-1 at 57-58. Hines, however, never suggested or engaged in further discussion to explore alternatives to the suggested accommodations. Id. at 63; see Kohl's Dep't Stores, Inc., 774 F.3d at 132 (noting engagement in the interactive process for the purpose of discussing "alternative reasonable accommodations"); Tuvell v. Int'l Bus. Machines, Inc., No. 13-cv-11292-DJC, 2015 WL 4092614, at *9 (D. Mass. July 7, 2015) (concluding at summary judgment that the plaintiff did not engage meaningfully in the interactive process because

"[d]espite the [defendant]'s demonstrated willingness to negotiate, [the plaintiff] never made an alternate proposal"), aff'd, 643 F. App'x 1 (1st Cir. 2016). Additionally, although Hines attests that it was difficult to provide an answer to Franchi's question a day-to-day basis because "every day was different," D. 42-1 at 54, Hines also acknowledges that she never gave Franchi a weekly or monthly estimate, id. at 55.

On the undisputed record, Hines has not shown cooperation in the interactive process such that Ellis can be held liable under the ADA for failure to provide reasonable accommodation. Ortiz-Martínez, 853 F.3d at 605 (citing Enica, 544 F.3d at 338). Accordingly, the Court allows the motion for summary judgment on this ground.[5]

**VI.   Conclusion**

For the foregoing reasons, the Court ALLOWS Ellis's motion for summary judgment. D. 38

**So Ordered.**

/s Denise J. Casper
United States District Judge

---

[5] To the extent that Ellis sought summary judgment on this claim on other grounds (i.e., undue hardship, see D. 39 at 15-17; D. 51 at 9-11), the Court does not reach same in light of the ruling above.